Monica Flood Brennan, ISB 5324
JAMES, VERNON & WEEKS, P.A.
Attorneys at Law
1626 Lincoln Way
Coeur d'Alene, ID  83814
Telephone: (208) 667-0683
Facsimile: (208) 664-1684
Mbrennan@jvwlaw.net
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL ST. JOHN AND DAWN WORKMAN, a married couple,<br><br>Plaintiffs,<br><br>vs.<br><br>KOOTENAI COUNTY, IDAHO; the KOOTENAI COUNTY SHERIFF'S OFFICE, BENJAMIN WOLFINGER, individually and in his official capacity as the Kootenai County Sheriff; Lieutenant Scott Maxwell individually and in his official capacity as a Kootenai County Lieutenant Sheriff; Vivienne Reynolds, individually and in her official capacity as the Kootenai County Sheriff Animal Control Officer; Shane Vrevich individually and in his capacity as a Kootenai County Sheriff Deputy; Michael Hanson, individually and in his capacity as a Kootenai County Sheriff Deputy; Craig Chambers, Individually and in his capacity as a Kootenai County Sheriff Deputy; Anthony Ghirarduzzi, Individually and in his capacity as a Kootenai County Sheriff Animal Control Officer; Scot Barnes individually and in his official capacity and an employee for the State of Idaho working on behalf of the Kootenai County Sheriff and the State of Idaho as Department of Agriculture employee; and JOHN/JANE DOES 1-10, individually and in their official capacities,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |

COMES NOW, the above-named Plaintiffs Daniel St. John and Dawn Workman, husband and wife, by and through their attorney of record, Monica Flood Brennan of the law firm James, Vernon & Weeks, P.A., and for a cause of action against the above-named Defendants, and complains and alleges as follows:

**I.**
**IDENTITY OF THE PARTIES, JURISDICTION AND VENUE**

1.1     Plaintiff Daniel St. John, is a married male who was living in Kootenai County Idaho at the time of the alleged incidents.

1.2     Plaintiff Dawn Workman is a married female living and owning a farm in Kootenai County, Idaho at the time of the alleged incidents.

1.3     The Plaintiffs will hereinafter be referred to as "the St.Johns."

1.4     Defendant Kootenai County, Idaho is a corporate body pursuant to I.C. §31-601 and other applicable law.

1.5     Defendant Benjamin Wolfinger is an Idaho citizen.

1.6     Defendant Benjamin Wolfinger in his official capacity as Kootenai County Sheriff at the time of the alleged incidents was an officer of Kootenai County, Idaho pursuant to I.C. §31-2001(1) and other applicable law. Sheriff Wolfinger's culpable acts and omissions were undertaken under color of state law.  Sheriff Wolfinger operated the Kootenai County Sheriff's Office as an instrumentality of Kootenai County, Idaho.  Sheriff Wolfinger, as a statutory officer of Kootenai County, had a final policy making authority for Kootenai County and the Kootenai County Sheriff Office and acted as a final policymaker with regard to all of his culpable decisions, including hiring, retaining, training, supervising, and controlling deputy sheriffs.

1.7     Defendant Vivienne Reynolds is an Idaho Citizen.

1.8     In her official capacity, Deputy Reynolds was a deputy acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger. Defendant Vivienne Reynolds culpable acts and omissions were undertaken under

color of state law.

1.9     Defendant Scott Maxwell is an Idaho Citizen.

1.10    In his official capacity, Lieutenant Scott Maxwell was an officer acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger.  Defendant Lieutenant Scott Maxwell's culpable acts and omissions were undertaken under color of state law.

1.11    Defendant Shane Vrevich is an Idaho Citizen.

1.12    In his official capacity, Defendant Shane Vrevich was an officer acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger. Defendant Shane Vrevich's culpable acts and omission were undertaken under color of state law.

1.13    Defendant Michael Hanson is an Idaho Citizen.

1.14    In his official capacity, Defendant Michael Hanson was an officer acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger.   Defendant Michael Hanson's culpable acts and omissions were undertaken under color of state law.

1.15    Defendant Craig Chambers is an Idaho Citizen.

1.16    In his official capacity, Defendant Craig Chambers was an officer acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger.   Defendant Craig Chambers culpable acts and omissions were undertaken under color of state law.

1.17    Defendant Anthony Ghirarduzzi is an Idaho Citizen.

1.18    In his official capacity, Defendant Anthony Ghirarduzzi was an officer acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger. Defendant Craig Chambers' culpable acts and omissions were undertaken under color of state law.

1.19    Defendant Scott Barnes is an Idaho Citizen.

1.20   In his official capacity, Defendant Scott Barnes was an officer acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger and for the Department of Agriculture for the State of Idaho. Defendant Scott Barnes' culpable acts and omissions were undertaken under color of state law.

1.21   Collectively, Deputies and Officers Maxwell, Reynolds, Vrevich, Hanson, Chambers, Ghirarduzzi, and Barnes will be referred to herein as "the Deputies."

1.22   John/Jane Does 1-10 are/were persons acting on behalf of Kootenai County, the Kootenai County Sheriff Department, Sheriff Wolfinger, and the Deputies; and/or whose acts and omissions were actual, direct and proximate causes of the illegal taking of property and the emotional and physical injuries to Dawn Workman and Daniel St. John.  The true identities, acts or omission of John/Jane Does 1-10 are currently unknown.  Plaintiffs reserve the right to Amend this Complaint if or when their identities and/or actions and/or responsibilities are discovered.

1.23   Jurisdiction and Venue:  This Court has jurisdiction and venue over this case by virtue of Idaho Code §5-514, Idaho Code §5-404, and 28 U.S.C. §§1331, 1343, and 1367 and other applicable laws because this action arises under the Constitution and the laws of the United States to redress the deprivation of Daniel St. John's and Dawn Workman's civil rights, and because those claims arising under Idaho law form a part of the same case or controversy under Article III of the United States Constitution.

1.24   The Court has personal jurisdiction over Defendants because they committed acts and omissions giving rise to the Workman/ St. John's damages.

1.25   Venue is proper in Kootenai County pursuant to 28 U.S.C. §1391(b)(1) and (2) and other applicable law because Defendants reside in Idaho and because a substantial part of the events or omissions giving rise to the case occurred in Idaho, Kootenai County.

1.26   On or before August 18, 2019, the St. Johns timely presented a Notice of Idaho Tort

Claim to the Kootenai County Clerk and the Secretary of State of Idaho, the Kootenai County Sheriff Department.  This notice was sufficient in all respects to preserve Plaintiff's rights to assert claims against Defendants under Idaho state law. Kootenai County has denied this claim.

1.27    Plaintiffs have satisfied the requirement of I.C.§ 6-610 by posting a bond with two sufficient sureties prior to the filing of the Complaint and in accordance with the Orders of this Court.

## II.
## GENERAL ALLEGATIONS

2.1    Plaintiff incorporates by reference all other paragraphs of this Complaint as if set forth herein.

2.2    The St. Johns, Daniel St. John and Dawn Workman are a married couple who, on February 14, 2019 owned a small family farm in Post Falls, Kootenai County, Idaho.

2.3    The St. Johns' farm had chickens, sheep, pigs, dogs, cats, and bulls as well as many other animals.  One of the animals that was considered a family pet was a sheep named "Baa Baa" who was raised by bottle feeding, was not kept in a pen and who would ride in the cab of the truck with Mr. St. John when he would go on errands.  The children would pet Baa Baa and loved it when he came with Mr. St. John.

2.4   The St. Johns also had a bull named "Ferdinand" who was a family pet as well as livestock.  This animal was a large animal in excess of 400 pounds with horns.

2.5    The winter of February, 2019 was very cold and had quite a large snow fall before up to February 14, 2019 and extending to February 21, 2019.

2.6    Many of the Plaintiffs' animals resided outside with coverings and/or enclosures during the winter time, which is common in North Idaho.  Mr. St. John and his wife had to feed the animals daily and bring them fresh water twice a day before it froze.

2.7    Over the course of several years the St. John's had invested a lot of time, money, love, hopes and heartache into the animals on the farm.  Some animals were considered livestock,

while others were considered family pets.

2.8  On or around February 14, 2019, some of the animals on the farm had died of a flu or some disease.  Mr. St. John left some dead animal bodies buried in the snow until the thaw because they were frozen solid.

2.9  On or around February 14, 2019, Kootenai County Sheriff Officers arrived at the family farm of the St. Johns and entered the property without a warrant.  The officers took pictures of all of the animals at the farm and their condition.

2.10  On or around February 14, 2019, Kootenai County Sheriff Deputies served a notice on the St. Johns requiring them to do certain things regarding their animals and their care, including making sure they had running water and heat.  The Sheriff Deputies gave the St. Johns 7 days to accomplish these tasks.   These demands were unreasonable, but Mr. St. John attempted to accomplish the tasks as requested.

2.11  On or around February 20 and 21, 2019, Kootenai County Sheriff Deputies arrived at the family farm of the St. John's and began confiscating some of the St. John's animals.

2.12    On or around February 21, 2019, the Deputies advised Daniel St. John that they were going to take his bull, Ferdinand, and his sheep, Baa Baa, and other animals, into state custody.

2.13  They arrived with a trailer and instructed Mr. St. John to herd the bull into the trailer. The Deputies told Mr. St. John that he had to cooperate with herding the bull, he would not be charged with a crime of animal cruelty.

2.14  The Kootenai County Sheriff Department arrived with a trailer and told Mr. St. John that he should assist them in putting the bull named "Ferdinand" into the trailer.   Mr. St. John said, "do I have to?"  Officers advised him they would go easier on him if he assisted them.

2.15  On or around February 21, 2019, Daniel St. John, being armed with only a rake, obeyed the commands of the Deputies by trying to Ferdinand into a trailer.

2.16  The bull was approximately 500 pounds with large horns.  The snow was very deep and there were deep trails running through the snow through which the bull was being prodded.

2.17  Deputy Reynolds wrote in her official report, "The bull may pose a safety threat while we were herding it down a path to the trailer." After Reynolds contacted her supervisor, Lieutenant Maxwell, for instructions, she reported, "he instructed us to make an effort but to stop if anyone felt endangered.  As a precaution, Deputy Hanson and Chambers armed themselves."

2.18  The report is attached hereto as Exhibit B.

2.19  Kootenai County Sheriff Deputies and Animal Control Officers stood armed, far away, watching while Mr. St. John and a civilian who owned the trailer attempted to prod the bull into the trailer.  The man hired by the county was stabbing the bull with a pitch fork while Mr. St. John attempted to coax the bull with the head of his rake.

2.20  While watching, the  Deputies openly discussed what they would do if and when Dan St. John was gored by the bull while they watched him attempt to put the bull in the trailer.

2.21  Officer Hanson wrote in his official report, "I was next advised there was some concerns that the bull may become aggressive once released from the fenced area.  ACO Reynolds spoke with Lt. Maxwell, who was advised of the situation and confirmed an attempt should be made to impound the animal.  Due to safety concerns, Deputy Chambers and I armed ourselves with our issued 12ga shotguns, loaded with slugs, in case the bull became violent.  St. John released the bull from the enclosed area, and people on scene attempted to herd it into the waiting trailer."

2.22  As Kootenai County Sheriffs armed with weapons were standing by, the bull became angered and gored Mr. St. John several times, ramming him violently up against a trailer.  Due to the high snow shoots, Mr. St. John had not where to run away from the bull.

2.23  Deputy Hanson wrote in his official report, " The bull would not cooperate, and refused to go inside the trailer or back toward the fenced in area.  At one point, it started to walk directly toward Deputy Chambers, who was standing off to the side on a small trail in the snow.  As the bull approached Deputy Chambers, he was unable to make it stop, and had to jump off of the trial into the deep snow to avoid getting trampled.  As St. John and others continued to herd the bull into the trailer, (it) continued to become more and more agitated, and began grunting and swinging its head in an aggressive manner."

2.23    Mr. St. John was blocked and could not escape the inevitable violent attack by the bull.

2.24  In his official report, Deputy Hanson wrote, "As St. John attemped to make the bull back up towards the rear of the trailer, I observed the bull charge St. John with its head lowered. The bulls head, and horns, made contact with St. John's body, and I observed it lift him up into the air with its horns.  St. John was turned upside down and then thrown to the ground, near the trailer hitch.  The bull again charged St. John, causing him to crawl underneath the bed of the pickup for safety."

2.25 The bull violently gored Dan St. John in his testicles, penis and groin area.  There was blood emanating from his crotch.  The bull broke two of Dan St. John's ribs, from which he still suffers daily pain.  He also suffered serious long-term injuries to his back and right shoulder.  Said injuries make it impossible for Dan St. John to work in his previous profession as a painter and he can no longer take care of his farm the way he could before the incidents herein.

2.26  Thereafter, the Deputies shot the bull and killed it.

2.27  In his official report, Deputy Hanson wrote, "Due to St. John and myself being in imminent danger from the bull, and it not showing any signs of stopping its aggressive behavior, I made the decision to use my shotgun to stop the threat."

2.28  The Kootenai County Sheriff Department and the state of Idaho then charged Mr. St. John with over 30 counts of criminal acts of Injury to Animals and or Animal Cruelty.

2.29  All criminal charges against St. John have been either dismissed and/or he has been fully exonerated.

2.30  The Kootenai County Sheriff Department thereafter killed and/or gave away and/or exterminated most of the St. John's animals that were confiscated from him.

2.31  Daniel St. John went to visit his animals in the care of the Kootenai County Sheriff Department.  They were not looking well, and their water was frozen just as it had been at his residence, which the Deputies advised him was unacceptable.

2.26   The St. Johns lost their family pets, "Ferdinand" and "Baa baa" as well as many

livestock, chickens, roosters, sheep and pigs, as well as their dream of a family farm, and their trust in the state and the police.

**The Deputies' Unfitness as Officers and Animal Control Officers**

2.27  The Deputies as a whole were unfit to handle the job they set out to accomplish.  As a whole no one was properly trained as to how to handle a bull with horns.

2.28  All Deputies were untrained and did not have the skill or knowledge regarding whether the animals were properly cared for by the Plaintiffs.

2.29  All of the Deputies were not following any appropriate policy of how and when to impound animals.

2.30  Deputy Reynolds was unfit and untrained to handle a bull with horns or how to instruct others how to do so.  She did not have the proper qualifications to determine when and how to confiscate farm animals.

2.31  The Kootenai County Sheriff's Office and the Deputies, without any law or authority, wrongfully seized the property of the St. Johns.

2.32  The Kootenai County Sheriff's Officer, and the Deputies, without any law or authority, wrongfully and recklessly forced Mr. St. John into a situation wherein he would clearly be injured or possibly killed.

**III.**

**FOURTH AMENDMENT CLAIMS**

3.1  Plaintiffs incorporate all allegations set forth hereinabove as though fully set forth at length.

3.2  The Fourth Amendment of the United States Constitution prohibits law enforcement officers from using excessive force when seizing citizens and or their property.

3.3  The Fourth Amendment of the United States Constitution prohibits the government from unreasonable searches and seizures.

3.4  The Deputies' treatment of Dan St. John was a physical assault on his person that was unwarranted.

3.4 Daniel St. John and Lisa St. John are entitled to bring an action based on the violation of their Constitutional rights pursuant to 42 U.S.C. § 1983 and other applicable laws.

3.5  The Deputies' instruction to Daniel St. John to assist them with putting a bull into the trailer at the threat of arresting and or charging him with a crime constituted excessive force, unlawful seizure, unlawful detention, and unlawful treatment of a person within their control and or custody in violation of the Fourth Amendment.  The behavior was reckless and wanton, and or grossly negligent.

3.5  The Deputies seizing the personal property and livestock of the St. John's without probable cause was a violation of their Fourth Amendment Rights against unreasonable searched and seizures.

**IV.**
**NEGLIGENCE, NEGLIGENCE PER SE, RECKLESSNESS,**
**AND TORTIOUS CONDUCT OF DEFENDANTS**
**CAUSING PERSONAL INJURY TO PLAINTIFF**

4.1     Plaintiff incorporates by reference all other paragraphs of this Complaint as if set forth herein.

4.2     At the time of the events described in the preceding paragraphs, Defendants had certain duties imposed upon him by statutes, rules, regulations and common law which they then and there owed to Plaintiffs; and said Defendants did negligently, gross negligently, carelessly, recklessly, heedlessly and tortiously breach said duties, including but not limited to:

4.2.a   Causing physical damage to Plaintiff Daniel St. John in his groin area and shoulder;

4.2.b   Causing emotional abuse to both Plaintiffs by taking their property without just cause and causing them to feel unsafe in their home and personal safety;

**V.**
**NEGLIGENCE, NEGLIGENCE PER SE, RECKLESSNESS,**
**AND TORTIOUS CONDUCT OF DEFENDANTS CAUSING**
**EXTREME EMOTIONAL DISTRESS TO PLAINTIFFS**

5.1     Plaintiff incorporates by reference all other paragraphs of this Complaint as if set

forth herein.

5.2     At the time of the events described in the preceding paragraphs, Defendants'
negligence and gross negligence caused extreme emotional distress to Plaintiffs.  Due to all of the
behavior and actions of Defendants, Plaintiffs will have difficulty feeling safe in his home and or
in his ownership of property.

5.3   Due to the acts of Defendants, Plaintiffs have physical manifestations of emotional
distress including but not limited to, nightmares, night sweats, clammy hands, crying, shaking, and
lack of sleep.

## VI.

## **RETURN OF WORKMAN AND ST. JOHN'S PROPERTY**

6.1  Plaintiff incorporates  by this reference all other paragraphs of this Complaint as if set
forth herein.

6.2   Defendants took without permission and without due process of law many items of
personal property which had emotional value as well as economic value belonging to the St. Johns.
These items were destroyed have not been returned.

6.3   The St. John's dream of having a family farm in retirement have been ruined due to
the actions of the Kootenai County Sheriff Department acting on behalf of the State of Idaho.

6.4   The items taken by Defendants valued in excess of $10,000 and were also
emotionally valuable to the Plaintiffs, which items have not been compensated by Defendants.

## IDAHO STATE LAW CLAIMS

## VII.

7.1  Plaintiffs incorporate by this reference all other paragraphs of this Complaint as if set
forth fully herein.

7.2   Kootenai County and the Kootenai County Sheriff's Office can only through their
commissioners, officers, deputies, employees and agents and are vicariously liable for their acts
and omissions within the scope of their duties.

7.3  Sheriff Wolfinger acts through his deputies, employees, and agents and is vicariously

liable for their acts and omissions within the scope of their duties.

7.4  All of the tools used to seize the St. John's animals and force Mr. St. John to conduct actions which ultimately led to his injuries were regulated and controlled by the Deputies and by Kootenai County, the Kootenai County Sheriff's office and Sheriff Wolfinger.

7.5  The Deputies failed to exercise reasonable care and by acts and omissions including but not limited to:

a.  Instructing Mr. St. John that he was to assist them with boarding a bull into a trailer without a weapon at the threat of being arrested and/or charged with a crime.

b.  Causing great bodily harm to Dan St. John by instructing him to act in a way that was foreseeably going to cause him injury.

c.  Standing by with weapons and joking about how Mr. St. John was going to be gored by a bull.

d.  Taking the St. John and Workman property without probable cause, due process and under color of state law.

e.  Keeping Mr. St. John out of harms way by having a government employee with training and experience herd the bull rather than instructing Mr. St. John to do so.

f.  Not taking care of the animals and property of the St. John's after they were seized and causing their destruction.

g.  Failing in all of the circumstances involved to use reasonable care in handling Mr. St. John and the Workman and St. John's property.

7.6  Kootenai County, the Kootenai County Sheriff's Office, and Sheriff Wolfinger failed to exercise reasonable care by acts and omission including but not limited to:

a.  Negligently hiring and retaining the Deputies who are named herein and also Does I-10, although they knew or should have known that the Deputies were unfit for the tasks they were performing.

b.  Failing to train, or improperly training, the Deputies;

c.  Failing to enact necessary policies and procedures; and

d.   Failing to properly supervise or control the Deputies regarding the handling of dangerous animals and the handling of animals in general and the instructions of civilians regarding putting them in dangerous situations; and

e.   Failing to otherwise use reasonable care under all circumstances.

7.7   Defendants' misconduct was negligent, reckless, malicious and/or undertaken with criminal intent.

7.8   Defendants' misconduct actually, directly and proximately caused injury to Dan St. John.

7.9   Defendants' misconduct caused Daniel St. John and Dawn Workman to suffer personal injury and loss of property.

## VIII.

## CAUSATION AND DAMAGES

8.1     Plaintiffs incorporates by reference all other paragraphs of this Complaint as if set forth herein.

8.2     As a direct and proximate result of Defendants' negligence, gross negligence, negligence per se, carelessness, recklessness, heedless conduct and tortious conduct, and breach of Constitutional Rights under the Fourth and Fourteenth Amendments, including but not limited to claims for:

8.2.a   The reasonable value to Plaintiffs for their loss of property;

8.2 b.   The reasonable value to Plaintiff Daniel St. John for personal injury including,

8.2.c   Loss of feeling safe and secure in his and her home;

8.2.d   Loss of consortium;

8.2 e   Pain and Suffering to Daniel St John due to physical injuries;

8.2.f   Mental suffering and anguish;

8.2.g   All other damages suffered by the Plaintiffs

8.3     As a direct and proximate result of Defendant's negligence, gross negligence,

negligence per se, carelessness, recklessness, heedless conduct and tortious conduct, Plaintiffs have incurred emotional distress damages attended by physical manifestations, including but not limited to emotional distress resulting from the damages to Plaintiffs.

## IX.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against said Defendants joint and severally in an amount in excess of $10,000.00, as will sufficiently compensate Plaintiffs for damages received, along with reasonable costs, interest, attorney fees and such other relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

COME NOW the above-named Plaintiff(s) by and through his/her (their) attorneys and demands a trial by jury on all issues herein.

DATED this 19th day of February, 2021.

JAMES, VERNON & WEEKS, P.A.
*Attorneys for Plaintiff*


 */s/Monica Flood Brennan*
Monica Flood Brennan, ISB# 5324



# Kootenai Co. Prosecuting Attorney
PAO Copy of Report for Incident 19-05426

|  |  |
|---|---|
| **Nature:** ANIMAL ABUSE | **Address:** 13108 W MARGISHWARD RD |
| **Location:** 41 | POST FALLS ID 83854 |

|  |  |  |
|---|---|---|
| **Offense Codes:** ANCR | | |
| **Statute Codes:** 25-3504 | | |
| **Received By:** C.BROWN | **How Received:** T | **Agency:** KCSD |
| **Responding Officers:** V. REYNOLDS, S.VREVICH, M.HANSON, C.CHAMBERS | | |
| **Responsible Officer:** V. REYNOLDS | **Disposition:** ACT 02/14/19 | |
| **When Reported:** 10:13:48 02/14/19 | **Occurred Between:** 10:04:06 02/14/19 and 10:04:06 02/14/19 | |

|  |  |  |
|---|---|---|
| **Assigned To:** V. REYNOLDS | **Detail:** AOI | **Date Assigned:** 02/20/19 |
| **Status:** CS | **Status Date:** 03/11/19 | **Due Date:** **/**/** |

|  |  |  |
|---|---|---|
| **Complainant:** 58672 | | |
| **Last:** ABBEY | **First:** RICHARD | **Mid:** JOHN |
| **DOB:** | **Dr Lic:** 652B | **Address:** |
| **Race:** **Sex:** | **Phone:** | **City:** |

Alert Codes:

CWPR CONCEALED WEAPON PERMIT, BATT BATTERY

## Offense Codes

|  |  |  |
|---|---|---|
| **Reported:** NC Not Classified | | **Observed:** |
| **Additional Offense:** ANCR Animal Cruelty | | |
| **Additional Statutes:** 25-3504 | | |

## Circumstances

| Responding Officers: | Unit : |
|---|---|
| V. REYNOLDS | 2377 |
| S.VREVICH | 2559 |
| M.HANSON | |
| C.CHAMBERS | |

|  |  |  |
|---|---|---|
| **Responsible Officer:** V. REYNOLDS | **Agency:** KCSD | |
| **Received By:** C.BROWN | **Last Radio Log:** **:**:** **/**/** | |
| **How Received:** T Telephone | **Clearance:** 6 REPORT TAKEN | |
| **When Reported:** 10:13:48 02/14/19 | **Disposition:** ACT **Date:** 02/14/19 | |
| **Judicial Status:** | **Occurred between:** 10:04:06 02/14/19 | |

Exhibit A

| **Misc Entry:** KR | | **and:** 10:04:06 02/14/19 |
|---|---|---|

| **Modus Operandi:** | **Description :** | **Method :** |
|---|---|---|
| LT | LOCATION TYPE | LT20 |
| | | RESIDENCE/HOME |
| D | DRUGS/LIQUOR | D99 |
| M | METHOD OF ENTRY | M24 UNK ENTRY |
| WT | WEAPONS / TOOLS USED | WT99 NONE |

## Involvements

| Date | Type | Description | Relationship |
|---|---|---|---|
| 03/06/19 | Name | BALDERRAMA, TERESA GAIL | MENTIONED |
| 02/23/19 | Name | NICHOLS, EDWARD JR JR | MENTIONED |
| 02/23/19 | Name | ASPEN VETERINARY SERVICES, | MENTIONED |
| 02/23/19 | Name | SANFORD, KERRY | MENTIONED |
| 02/23/19 | Name | KENNEDY, MARY LISA | MENTIONED |
| 02/15/19 | Name | WORKMAN, DAWN JAYNE | SUSPECT |
| 02/15/19 | Name | BARNES, SCOTT | MENTIONED |
| 02/15/19 | Name | ST JOHN, DANIEL VICTOR | OFFENDER |
| 02/14/19 | Name | ABBEY, RICHARD JOHN | Complainant |
| 02/14/19 | Cad Call | 10:13:48 02/14/19 ANIMAL ABUSE | Initiating Call |

## Narrative

```
KCSO    [X]CRIME REPORT              [ ]INCIDENT REPORT
--------------------------------------------------------------------------------
ADDITIONAL NAMES/DESCRIPTIONS:
--------------------------------------------------------------------------------
INJURIES:    NO:X     YES:      DESCRIBE:
--------------------------------------------------------------------------------
PHOTOS/VIDEO TAKEN:    NO:      YES:X      PHOTOGRAPHER I.D. :2377
--------------------------------------------------------------------------------
RELATED REPORT NUMBER(S):
--------------------------------------------------------------------------------
NARRATIVE:
```

On 2/14/19 at 1029 hours I (ACO V. Reynolds) and Dep. S. Vrevich arrived at the above address in response to an animal abuse call for service regarding a sheep that appeared to have been recently shaved and had no shelter in its pen.

Upon arrival we saw the referred to sheep in a pen along the side of the road, there were two rams in a round pen with no shelter, no water, and no sign that they had been fed recently. The smaller of the two had almost no hair left on its body, due to the patchiness and red marks on the skin it appeared the hair had been ripped out, not shaved. Up the hill we could see another pen with two more rams in it, those two appeared to be missing clumps of hair and their pen also had no food or water in it but surrounding trees provided adequate shelter from the elements. We continued up the road to the residence in an effort to contact the owner of the sheep. There was a large green building that didn't appear to be lived in, a trailer, multiple outbuildings and vehicles so we announced our presence and walked around trying to find the owner. On this part of the property we found many more animals. There was a jersey bull in a pen with no shelter, food, or water, appeared underweight and to be having a medical issue involving its scrotum which was hanging almost to the ground, extremely enlarged and dripping a large amount of blood. In his pen there appeared to be another bull that was deceased and mostly frozen under the snow, the only part visible was it's horn and some fur on its head. Continuing, we found multiple pens with pot belly pigs in them. None of the pens had food or water available to the animals but they did have adequate shelter. We counted a total of 22 live pot belly pigs with body condition scores ranging from 3 to 9. We also found a total of 8 deceased pot belly pigs, some had been pulled out of the pens and were on the ground, some were in pens by themselves almost completely covered in snow, and 2 were inside a pen with 9 other live pigs. There was a pen with 3 more sheep that had no food or water, another pen with a jersey bull standing ankle deep in muck with no food or water and appeared to be under weight, and there was a small shed with a sheep and some chickens in it, the shed also had no food or water available for the animals. After photographing our finding with my department issued camera, see attached, we looked up the owner of the property and called S-Dawn J. Workman, on the phone she stated the property and all the animals belonged to her and her husband, S-Daniel V. St John, and that she was at work but her husband would be there shortly to speak with us.

St John arrived at the residence and we informed him why we were there, he stated he was aware of the rams fur being pulled out by the larger one and that he was having an issue of domination, the rams with horns were dominating the other ones by pulling their hair out and he'd never had this problem before. When asked about the pigs he stated that he had been hit with some kind of disease due to the harsh winter and spikes in dropping temperatures his pigs were showing no signs of illness then dropping dead of disease but he hadn't had

a vet out because the value of the pigs did not warrant paying for a vet visit.
St John stated he feeds all his animals everyday, the pigs get slop that he
makes with hot water and food from the food bank and the other animals get hay.
Regarding the jersey bulls he stated the one with the enlarged and bloody
scrotum he had banded the bull two years ago and it has been like that ever
since and the deceased bull in the pen with it had dropped dead because of the
harsh winter. He stated he hadn't disposed of all the dead bodies because it's
been frozen out so he was waiting for the crows to take care of them. St John
was adamant that he does not abuse his animals and he could show us what he
feeds them, I informed him that county ordinances also require the animals to
have access to clean drinking water at all times and because of our findings I
was obligated to investigate further and I would be contacting a veterinarian
for a professional opinion.

I contacted M-Scott Barnes the Idaho State Veterinary and informed him of our
findings, he arrived shortly after and myself and St John showed him around the
property to see all the animals and their living conditions. Based on Barnes
observations he believed the hairless sheep was due to ectoparasites, the bull
with the medical issue involving the scrotum was the result of a bad castration
which caused a herniated open scrotum, Barnes recorded the BCS of all animals
and noted the poor quality of the food they were being provided along with lack
of water and shelter. I will attach his full report when provided. Barnes
informed St John of IDAPA 02.04.17 Dead Animal Movement and Disposal
requirements and issued him a Directive Compliance Agreement which St John
agreed to and signed, see attached. The agreement states that within 7 days St
John must provide all animals continuous access to clean, ice-free drinkable
water, he must humanely euthanize or provide proper vet care for the bull with
the open scrotum, remove manure and litter from stalls, pens, and corrals and
provide area for the bull to get out of the weather and muck it's standing in,
and he must provide shelter to the sheep on the hill by the road and treat the
hairless sheep for ectoparasites or slaughter it. We informed St John that we
would be back within 7 days to ensure the directive compliance agreement has
been met.

------------------------------------------------------------------------------
This incident was captured on my body worn camera. For the complete details and
circumstances of this case please refer to the videos. This report is a summary
of the events to my best ability.
------------------------------------------------------------------------------
DISPOSITION:AC

## Supplement

**Officer:** V. REYNOLDS

#### *****DEPUTY'S SUPPLEMENTAL REPORT*****

On 2/20/19 at 1211 hours I (ACO V. Reynolds) and ACO A. Ghirarduzzi arrived at the above address to follow up with St John on his progress of complying with the Directive Compliance Agreement he was given and to check on the welfare of the animals.

The first animals we saw were the sheep on the side of the road leading to the residence, it appeared the sheep with no hair had been slaughtered as agreed to but neither sheep pen had ice-free drinkable water, he was feeding them old grass clippings, and the tarp provided for the lower pen was not set up in a way to provide adequate shelter. One of the sheep in the upper pen appears to have much worse hair loss than it did last week. At the residence we contacted St John who was out feeding when we arrived and he showed us the progress he made with the jersey bulls. The bull that was stuck standing in the muck had been moved to a different pen and now that its feet were visible we could see that its hooves appeared overgrown and deformed causing difficulty to walk. St John fed this bull a pile of old grass clippings, some chunks of bread and let it drink from a bucket of water and removed the bucket when it finished drinking instead of providing continuous access to water as agreed.

The other jersey bull with the medical issue regarding its scrotum had not received vet care nor been slaughtered as agreed but St John stated that would be done tomorrow, he didn't seem worried about the bull so I asked him if he realized the animal was in pain and he stated no it's been like that for two years and he's been fine. He fed that bull one section of old hay that appeared moldy, I advised St John that that wasn't enough feed for a bull that size and he stated that he just throws him snacks since he'll be getting slaughtered anyway. The bull also had no water available and the deceased bull was still in the pen with it. The pigs and remaining sheep all appeared to be in the same condition and still none of them had access to water. We asked St John if he disposed of the deceased pig bodies properly and he said he bagged them and took them to the landfill on Prairie, as I was looking around I found that he left three of the pig bodies along with the bull and I showed him where they were so that he could dispose of them. We will be going back tomorrow with the state vet, state livestock investigator, and state brand inspector.

## Supplement

**Officer:**M.HANSON

*****DEPUTY'S SUPPLEMENTAL REPORT*****

On 02/21/19 at approximately 1400 hours, Deputy Chambers and I (Deputy Hanson) responded to the mentioned address to assist ACO Reynolds and ACO Ghirarduzzi with the impound of numerous animals at the location, follow-up call 19-06222. I was advised that they would be impounding a large bull cow, which was contained inside a fence at the location, as well as numerous pigs and other animals. ACO Ghirarduzzi spoke with the owner, O-Daniel St John, and advised him that the animals were going to be impounded based on the level of abuse and neglect which was evident, and which was confirmed by a veterinarian and Idaho Brand Inspector Mary Kennedy, who were also on scene. St John agreed to cooperate, and offered to assist in loading the bull into the waiting trailer.

I was next advised there was some concerns that the bull may become aggressive once released from the fenced area. ACO Reynolds spoke with Lt. Maxwell, who was advised of the situation and confirmed an attempt should be made to impound the animal. Due to the safety concerns, Deputy Chambers and I armed ourselves with our issued 12ga shotguns, loaded with slugs, in case the bull became violent. St John released the bull from the enclosed area, and people on scene attempted to herd it into the waiting trailer. The bull would not cooperate, and refused to go inside the trailer or back toward the fenced in area. At one point, it started to walk directly toward Deputy Chambers, who was standing off to the side on a small trail in the snow. As the bull approached Deputy Chambers he was unable to make it stop, and had to jump off of the trail into the deep snow to avoid getting trampled. As St John and others continued to herd the bull into the trailer, 1 continued to become more and more agitated, and began grunting and swinging its head in an aggressive manner. Eventually, the bull became trapped on the side of the trailer with St John blocking its escape path. At this point, I was standing near St John, on the other side of the trailer hitch directly across from the bull.

As St John attempted to make the bull back up towards the rear of the trailer, I observed the bull charge St John with its head lowered. The bulls head, and horns, made contact with St John's body, and I observed it lift him up into the air with its horns. St John was turned upside down and then thrown to the ground, near the trailer hitch. The bull again charged St John, causing him to crawl underneath the bed of the pickup for safety. Due to St John and myself being in imminent danger from the bull, and it not showing any signs of stopping its aggressive behavior, I made the decision to use my shotgun to stop the threat.

I verbally announced I was going to shoot the bull, to which St John first responded "no". However, as the bull continued to attack St John, he replied "ok ok". I took aim at the bull's head, which was approximately 3 feet away, and was raised up and away from where St John was hiding underneath the truck. The backdrop behind the bull's head was a large snow pile, covering a large pile of trash and dirt, and I was aware that the other people on scene were behind the trailer and well outside my line of fire. As the bull began to charge St John again, I fired one 12ga slug at the bulls head which impacted at the base of its skull. I observed the bull immediately fall to the ground and stop moving and observed blood coming from the bulls head. I watched it for several moments to confirm it was no longer a threat and confirmed it was deceased.

St John advised he had been injured in the groin and legs by the attack and medical was requested to respond. Medical personnel responded to the scene, and evaluated St John's injuries. Medical determined St John had suffered superficial scratches to his legs and bruising and some tearing to the skin of his penis, as well as bruising to the groin where the bull had lifted him off the ground. St John's injuries were not serious, and he refused

to be transported to the Hospital for further treatment. Deputy Chambers and I remained on
scene to assist in the impounding of the remaining animals with no further incident. Due to
the numerous animals on scene, the task could not be completed prior to dark, and it was
determined the remaining animals would be impounded the following day. Deputy Chambers and I
cleared the scene. I had no further involvement in this case.

------------------------------------------------------------------------------
This incident was captured on my body worn camera. For the complete details and
circumstances of this case please refer to the videos. This report is a summary
of the events to my best ability.
------------------------------------------------------------------------------

## Supplement

**Officer:** V. REYNOLDS

*****DEPUTY'S SUPPLEMENTAL REPORT*****

On 2/21/19 at 1115 hours I (ACO V. Reynolds) arrived at the above address to follow up with an animal abuse call for service along with ACO A. Ghirarduzzi, Deputy M. Hanson, and Deputy C. Chambers.

I met Scott Barnes, M-Kerry Sanford the Idaho State Livestock Investigator, and M-Mary Kennedy the State Brand Inspector so that they could examine the animals and their living conditions as well as verify that St John had complied with the directive compliance agreement he was given a week prior, and address any brand inspection laws that have been violated. We all met St John on the property where he was butchering the bull that had had a medical issue regarding its scrotum. We advised him why we were there, what we would be doing and that depending on what Barnes and Sanford found his animals may be impounded. I showed Barnes, Sanford and Kennedy where all the animals were and they examined each ones body condition score and living environments. While they were completing that, Kennedy informed St John of all the laws he had violated regarding brand inspections and educated him on such laws as well as issued him a warning citation for violation: Sale of livestock without brand inspection and she will be following up on that aspect of the case.

After Barnes and Sanford finished their inspection they advised me that they had found the overall health of all animals to be poor, St John had complied with the agreement in that he humanely euthanized the bull with the medical issue regarding its scrotum and the sheep with no hair, he got the other bull out of the muck it was standing in, and he attempted to provide shelter for the sheep on the hill but it was inadequate. He failed to comply with the agreement in that none of the animals had access to clean, ice-free drinkable water. Also he was still feeding the sheep and bulls grass clippings, bread and some old moldy hay and he was feeding the pigs slop made mostly of bread, dog food, and some vegetables that all comes from the food bank, all of which is an unacceptable diet. St John let us know that he has no running water on the property and as such he is unable to provide the animals with as much water as they need, he also cannot keep the water from freezing. Barnes also found the conditions the animals were living in to be unsanitary and without adequate shelter. Based on Barnes and Sanfords investigation, they determined that the animals need to be impounded by the Kootenai County Sheriffs Office to ensure they would be appropriately cared for which he put in writing as required by state statute 25-3501A, see attached.

After Barnes made his determination we notified St John, he volunteered to help us load animals after he was advised that he had no obligation to do so and we began efforts to impound all animals and take to the M-Kootenai County Fairgrounds where they will be kept and cared for. We started with the jersey bull, I first asked my Lt. Maxwell if we should attempt moving the bull as the pen was not accessible by trailer and the bull may pose a safety threat while we were herding it down the path to the trailer, he instructed us to make an effort but to stop if anyone felt endangered. As a precaution Deputy Hanson and Chambers armed themselves before we began. The bull moved fairly easily with St John leading it and volunteer M-Ed Nichols behind it but it did not want to go inside the trailer and turned around or went past the trailer multiple times. After multiple attempts the bull appeared to be getting worked up , the bull went along the side of the trailer where St John stood in its way and tried not to let it pass. I was standing far away but saw St John grabbing the bull by the horns and get thrown upwards then fall to the ground and I could see the bull head butting St John on the ground, I then heard Hanson fire his weapon and dispatch the bull for St Johns safety. St John had been injured in the leg and groin area so medical was requested on scene, they examined St John and he refused to be transported to the hospital.

Next we began hauling pigs from their pens to the trailer, without incident we loaded 15 pigs before it got dark and had to stop for the night. We hauled those pigs to the fairgrounds which was set up with pens for us, we got them appropriate bedding, food, and water for the night. I ensured that the 7 pigs, 7 sheep, and 5 chickens remaining on the property had appropriate care for the night. The next morning we finished loading and transporting all the animals to the fairgrounds and issued St John an Impound Notification Notice, see attached.

I had a licensed veterinarian from M-Aspen Veterinary Services, Annie Bowes, meet us at the fairgrounds to examine all the animals and recommend necessary care. From Bowes examination, she found that all of the animals body condition showed that they hadn't been provided proper nutrition. Some pigs were under weight and some appeared to be of okay weight but none of them had developed enough muscle so even the ones that appeared fat had not enough muscle to support the fat which was the cause of inadequate protein in their diet, which was also evident by the quality of their coats and development of their feet she said. She examined each chicken individually and found them all underweight. 4 of the sheep she found to be very underweight, 3 of them were better but still lacked muscle. I will attach a copy of her full report when provided. Bowes also recommended what kind of food to feed each animal based on their needs which will be followed while in the care of the county. All of the the sheep and pigs were tagged with numbers on their ears and all of the animals were photographed.

I completed a complaint request charging St John with 35 counts of I.C. 25-4504 Cruelty to Animals.

## Supplement

**Officer:** A.GHIRARDUZZI

\*\*\*\*\*DEPUTY'S SUPPLEMENTAL REPORT\*\*\*\*\*

On 02/26/18 at about 0800 hours, I (ACO A Ghirarduzzi) was feeding the pigs at the Kootenai County Fairgrounds when I observed  two baby pigs not moving in one of the pens. (Identification Tag IDAG-4757)   After I removed the two adult pigs (both female) from the pen I observed two more baby pigs none of which appeared to be alive.  I cleaned the pen out and in total I observed 11 pigs, all deceased, all pigs were warm to the touch.

I removed all 11 pigs and placed new bedding in the pen and returned both adult pigs back. I disposed of the 11 deceased piglets.

## Supplement

**Officer:** A.GHIRARDUZZI

*****DEPUTY'S SUPPLEMENTAL REPORT*****

On 03/04/2019 at about 1100 hours, I (ACO A. Ghirarduzzi) contacted St. John by landline in regards to his animals at Kootenai County Fairgrounds. I asked St. John if he wanted to sign over all or some of the animals to Kootenai County Sheriff's Office. St. John stated he would sign over most. I informed St. John I would need him to respond to the Fairgrounds to identify what ones he wanted to keep. St. John stated he would be there at about 1500 hours.

I contacted St. John at the South West gate to the Fairground and he followed me to building nine where the animals were being housed. St. John stated he wanted to keep five sheep and three pigs. I had St. John read me the number on the identification tags on the sheep and pigs. St John stated he wanted to keep the following tags numbers.

```
Sheep-Ewe IDAG-4776
Sheep-Ewe IDAG-4782
Sheep Ram IDAG-4777
Sheep Weather IDAG-4779
Sheep Ewe IDAG-4780
Swine Bore- IDAG-4766
Swine Sow- IDAG-4654
Swine Sow- IDAG-4753
```

St. John stated he did not want the following tag numbers.

```
Sheep-Ram-IDAG-4781
Sheep-Ram-IDAG-4778
Swine-Bore-IDAG-4755
Swine-Sow-IDAG-4758
Swine-Sow-IDAG-4759
Swine-Sow-IDAG-4760
Swine-Sow-IDAG-4761
Swine-Bore-IDAG-4764
Swine-Bore-IDAG-4765
Swine-Sow-IDAG-4763
Swine-Bore-IDAG-4752
Swine-Sow-IDAG-4770
Swine-Bore-IDAG-4773
Swine-Bore-IDAG-4771
Swine-Sow-IDAG-4772
Swine-Sow-IDAG-4769
Swine-Sow-IDAG-4774
Swine-Bore-IDAG-4768
Swine-Sow-IDGA-4757
Swine-Sow-IDGA-4756
Swine-Bore-IDGA-4762
```

St. John also signed over four Hens and one Rooster. All animals are still located at the Kootenai County Fairground.

I later forwarded all relinquished animal and non relinquished animal forms to records.

## Supplement

**Officer:** A.GHIRARDUZZI

*****DEPUTY'S SUPPLEMENTAL REPORT*****

On 3/6/2019 at about 0900 hours, I (ACO A. Ghirarduzzi) and ACO. V. Reynolds responded to the Kootenai County Fairgrounds to feed the animals being housed.

When we arrived we noticed one of the panels of the pens had been damaged by the ram within. (Identification tag IDAG-4779). It appeared the ram had head butted the panel on the north side of the pen over and over again causing it to be moved about two feet outward and causing the beams going horizontal and vertical to crease in the center.

I contacted M-Teresa Balderrama at the fairgrounds and informed her of the damage to pens owned by the fairground. Balderrama stated she was aware of the damage and wanted to know who to send the bill to. I informed Balderrama I was unsure but would find out and inform her later in the day.

Balderrama stated she would email me the receipt in case I needed it.

## Supplement

**Officer:** V. REYNOLDS

*****DEPUTY'S SUPPLEMENTAL REPORT*****

On 3/6/19 at approximately 1500 I received an email from Annie Bowes, Veterinary at Aspen Veterinary Service with her recommendation for the animals to be sold at auction based on their body conditions. I have forwarded a copy of this recommendation to records. I also received Dr. Scott Barnes case reports and images, I forwarded the report to records and submitted the images into evidence.

## Supplement

**Officer:** V. REYNOLDS

*****DEPUTY'S SUPPLEMENTAL REPORT*****

On 3/15/19 I reviewed the inventory of pigs and found that supplemental report 5 had inaccuracies in pig tag numbers. I found that listed under the animals St John wanted to get back was a Swine-Sow-IDAG-4654. There is no tag number 4654 but there is a 4754 and that pig is now a sow it is a bore. I spoke with A. Ghirarduzzi and found out that he did not physically check the ear tags on the pigs St John pointed out to keep, he got the numbers off a list that was in the barn but he did not know that some of the pigs had been moved since that list was made so the numbers were out of order. The correct identification for the pigs St John chose to get back are as follows:

Swine-Sow-IDAG-4752 (which is the one previously documented as 4654)
Swine-Sow-IDAG-4753
Swine-Bore-IDAG4766

The animals St John chose to try to get back have been separated in pens on the opposite end of the barn from the ones he signed over since the day he came to the fairgrounds and did so.

## Name Involvements:

**SUSPECT :** 201314
| | | | | | |
|---|---|---|---|---|---|
| **Last:** | WORKMAN | **First:** | DAWN | **Mid:** | JAYNE |
| **DOB:** | 10/20/75 | **Dr Lic:** | QK325757G | **Address:** | 1492 W IRON HORSE CIR |
| **Race:** W | **Sex:** F | **Phone:** | (208)691-3368 | **City:** | POST FALLS, ID 83854 |

**MENTIONED :**541226
| | | | | | |
|---|---|---|---|---|---|
| **Last:** | ASPEN VETERINARY SERVICES | **First:** | | **Mid:** | |
| **DOB:** | **/**/** | **Dr Lic:** | | **Address:** | 3521 N GREENSFERRY RD |
| **Race:** | **Sex:** | **Phone:** ( ) - | | **City:** | POST FALLS, ID 83854 |

**Complainant :** 58672
| | | | | | |
|---|---|---|---|---|---|
| **Last:** | ABBEY | **First:** | RICHARD | **Mid:** | JOHN |
| **DOB:** | | **Dr Lic:** | 652B | **Address:** | |
| **Race:** W | **Sex:** M | **Phone:** | | **City:** | |

**MENTIONED :**266681
| | | | | | |
|---|---|---|---|---|---|
| **Last:** | BARNES | **First:** | SCOTT | **Mid:** | |
| **DOB:** | **/**/** | **Dr Lic:** | | **Address:** | IDAHO STATE VETENARY |
| **Race:** U | **Sex:** M | **Phone:** | | **City:** , | |
| | | | FAX | | |

**MENTIONED :**100661
| | | | | | |
|---|---|---|---|---|---|
| **Last:** | BALDERRAMA | **First:** | TERESA | **Mid:** | GAIL |
| **DOB:** | | **Dr Lic:** | 686A | **Address:** | |
| **Race:** W | **Sex:** F | **Phone:** | | **City:** | |

**MENTIONED :**594901
| | | | | | |
|---|---|---|---|---|---|
| **Last:** | SANFORD | **First:** | KERRY | **Mid:** | |
| **DOB:** | **/**/** | **Dr Lic:** | | **Address:** | |
| **Race:** | **Sex:** | **Phone:** ( ) - | | **City:** | |

**MENTIONED :**636089
| | | | | | |
|---|---|---|---|---|---|
| **Last:** | KENNEDY | **First:** | MARY | **Mid:** | LISA |
| **DOB:** | | **Dr Lic:** | | **Address:** | |
| **Race:** | **Sex:** F | **Phone:** | | **City:** | |

**MENTIONED :**88006

| | | | | | | |
|---|---|---|---|---|---|---|
| **Last:** | NICHOLS | **First:** | EDWARD | **Mid:** | JR | |
| **DOB:** | ▓▓▓▓ | **Dr Lic:** | ▓372G | **Address:** | ▓▓▓▓▓ | |
| **Race:** W | | **Sex:** M | **Phone:** | ▓▓▓▓ | **City:** | ▓▓▓▓▓ |

**OFFENDER :** 279060

| | | | | | |
|---|---|---|---|---|---|
| **Last:** | ST JOHN | **First:** | DANIEL | **Mid:** | VICTOR |
| **DOB:** | 03/14/56 | **Dr Lic:** | CC214324E | **Address:** | 1492 W IRON HORSE CIR; IRON HORSE CIR |
| **Race:** U | | **Sex:** M | **Phone:** (208)691-4375 | **City:** | POST FALLS, ID 83854 |

<u>NOTICE OF TORT CLAIM</u>

TO:    Kootenai County Clerk
        451 N. Government Way
        Coeur d'Alene, ID 83814

        and to,

        Kootenai County Sheriff Department
        Ben Wolfinger
        5500 N. Government Way, Coeur d'Alene ID 83815
        Coeur d'Alene, ID 83815

        and to,

        Kootenai County Prosecutor
        Barry McHugh
        501 N. Government Way
        Coeur d'Alene, ID 83814

        and to:

        Secretary of State
        PO Box 83720
        Boise, Idaho 33720-0080

      COMES NOW, claimant, Daniel St. John, and his wife, Dawn Workman, by and through Monica Flood Brennan, Attorney at Law, with the law firm of James, Vernon & Weeks, P.A., and presents the Notice of Tort Claim to the Idaho Secretary of State for filing, in compliance with Title 6, Chapter 9, <u>Idaho Code</u>.  The undersigned hereby presents a claim against the Kootenai County Sheriff Department, Kootenai County Prosecutor's Office and State of Idaho for damages arising out of any occurrence which happened as follows:

Name of Claimant:  Daniel St. John,

Street Addresses: 13108 W. Marghishward Rd, Post Falls, ID 83854

Phone Number:  Ph:  208-691-4375

Daniel St. John: c/o Attorney Monica Flood Brennan: phone:  208-667-0683 c/o James, Vernon and Weeks, P.A.

1.      Date and time: On or about; February 14, 2019 to February 21, 2019

2.      Place or location:  13108 W. Marghishward Rd, Post Falls, ID 83854;

3.      Cause of damages:

Exhibit B

On February 14, 2019, Claimant owned a small gentleman's farm.  He had sheep, chickens, Bulls, and pigs.  It was the middle of winter and there had been a significant amount of snow for several days and several weeks.  The state wrongfully took his animals claiming that he had neglected and or harmed them.

On February 21, 2019, the Kootenai County Sheriff Department came to Daniel St. John's residence and advised him in person that they were confiscating his animals.  They advised Mr. St. John that he was to assist them in loading his bull, named Ferdinand, into a trailer for removal to the Fair Grounds.  While they watched with weapons, Mr. St. John attempted to coax the bull down a narrow path in the snow and to get the bull to enter a horse trailer.  Meanwhile, a civilian hired by the State was on scene with a pitch fork stabbing the bull and trying to make the bull get into the trailer.  Mr. St. John was unarmed, except that he was attempting to push the bull with a rake.  The police did not allow or advise Mr. St. John to have any type of weapon.  They advised Mr. St. John that if he did not assist them, they would take that into consideration as to whether he was being cooperative.  When Mr. St. John was behind the trailer, and the man with the pitch fork was behind the bull stabbing at the bull, the bull charged Mr. St. John and stabbed him with his horns repeatedly, goring him in the body and groin area, pinning him up against a trailer and on the ground.  Mr. St. John suffered long term injuries to his back, groin, and shoulder area.

4.      Witnesses Known at this Time:

| Name | Address | Phone Number |
|------|---------|--------------|
| Dawn Workman<br>Dan St. John's wife | 13108 W. Marghishward Rd<br>Post Falls, ID 83854 | 208-691-3368 |
| Mike George | 6862 N. 25th East<br>Idaho Falls, ID | 208-521-4224 |
| Pat Boss | Address Unknown<br>Neighbor of Dan St. John | |
| Kimo Kaheana | Address Unknown<br>Neighbor of Dan St. John | 208-777-5224 |
| Annie and Nick Kazor | Address Unknown | 919-398-1512 |
| Scott Maxwell<br>Kootenai County Sheriff | 5500 N. Government Way<br>Coeur d'Alene, ID  83815 | |
| Craig Chambers<br>Kootenai County Sheriff | 5500 N Government Way,<br>Coeur d'Alene, ID 83815 | |
| Shane Vrevich | 5500 N. Government Way, | |

Kootenai County Sheriff                    Coeur d'Alene, ID  83815

Richard John                               12451 W. Monument Dr
                                           Post Falls, ID  83854

Anthony Ghirarduzzi        5500 N. Government Way
Kootenai County Sheriff                    Coeur d'Alene, ID  83815

Michael Frank Hanson                       5500 N Government Way
Kootenai County Sheriff                    Coeur d'Alene, ID 83815

Annie Bowes, DVM                           3521 N. Greensferry Road
                                           Post Falls, ID  83854

Scott Barnes, DVM, Idaho Dept. of Agriculture, PO Box 7249,
                                                   Boise, ID  83707

Vivian Reynolds                            5500 N. Government Way
Kootenai County Sheriff                    Coeur d'Alene, ID  83815

Kerry Sanford                              1118 F Street
Kootenai County Sheriff                    Lewiston, ID  83501

5.       Amount of Claim:  $1,000,000;

6.       Daniel St. John asserts personal injury and constitutional claims.  He is claiming all
         damages caused by Defendants' wrongful conduct, including but not limited to:
A:       Reckless Infliction of Personal Injury .
B:       Reckless Infliction of  Emotional Harm including extreme emotional distress due to these
         incidents.  Defendants' acts and omissions were in violation of Daniel St. John's
         constitutional rights as well as Idaho law.
C:       Loss of income and loss of ability to engage in gainful activity
D:       Loss of his animals

7.       Daniel St. John's wife, Dawn Workman, has incurred damages in the form of Loss of
         Consortium and loss of her animals.

Dated this _____ day of August, 2019.


                         JAMES, VERNON & WEEKS, P.A.


                         _____
                         By: Monica Flood Brennan
                            Attorney for Plaintiff