UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL ST. JOHN and DAWN WORKMAN, a married couple,<br><br>     Plaintiffs,<br><br>     v.<br><br>KOOTENAI COUNTY, IDAHO; the KOOTENAI COUNTY SHERIFF'S OFFICE, BENJAMIN WOLFINGER, individually and in his official capacity as the Kootenai County Sheriff; Lieutenant SCOTT MAXWELL individually and in his official capacity as a Kootenai County Lieutenant Sheriff; VIVIENNE REYNOLDS, individually and in her official capacity as the Kootenai County Sheriff Animal Control Officer; SHANE VREVICH individually and in his capacity as a Kootenai County Sheriff Deputy; MICHAEL HANSON, individually and in his capacity as a Kootenai County Sheriff Deputy; CRAIG CHAMBERS, Individually and in his capacity as a Kootenai County Sheriff Deputy; ANTHONY GHIRARDUZZI, Individually and in his capacity as a Kootenai County Sheriff Animal Control Officer; and JOHN/JANE DOES 1-10, individually and in their official capacities,<br><br>     Defendants. | Case No. 2:21-cv-00085-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is the motion of Plaintiffs Daniel St. John and Dawn Workman. Dkt. 23. They ask the Court to set aside its order of dismissal, Dkt. 22, and to allow additional time to serve defendants. After considering the briefing, the Court will deny the motion for the reasons explained below.

## PROCEDURAL BACKGROUND

Plaintiffs Daniel St. John and Dawn Workman began this lawsuit on February 19, 2021 by filing a motion to waive or set bond under Idaho Code § 6-610. Dkt. 1. On March 9, 2021, the Court granted plaintiffs' motion and set the bond at $300. Dkt. 2. Plaintiffs paid the bond shortly thereafter. On May 19, 2021, plaintiffs filed their official complaint, which is identical to the proposed complaint filed on February 19, 2021. Dkt. 4.

On June 8, 2021, defendants filed a motion to dismiss for failure to state a claim. Dkt. 9. Plaintiffs did not respond. On August 3, 2021, the Court dismissed plaintiffs' state law claims but did not dismiss their § 1983 claims. Dkt. 13. In the same order, the Court allowed plaintiffs "thirty (30) days from the date of this order to complete service on the Defendants." *Id*. This gave plaintiffs until September 2, 2021 to complete service of process on the defendants.

On October 19, 2021, Defendant Scott Barnes filed a motion to dismiss. Dkt. 15. A corrective entry followed the next day. Plaintiffs responded to the motion in

the appropriate time frame with a motion for voluntary dismissal, Dkt. 16,

followed by a joint stipulation of dismissal, Dkt. 19. The Court subsequently

dismissed all claims against Scott Barnes and the State of Idaho Department of

Agriculture and terminated the parties from the action. Dkt. 20.

On October 20, 2021, the remaining defendants filed a motion to dismiss the

complaint under Rules 4 and 12(b)(5) of the Federal Rules of Civil Procedure. Dkt.

16. Plaintiffs again failed to respond to the motion. On January 24, 2022, the Court

issued an order dismissing the plaintiffs' complaint for both failure to respond to

the dispositive motion and for lack of service. Dkt. 22.

Plaintiffs now ask the Court to set aside that order pursuant to Federal Rule

of Civil Procedure 60(b) and to give them additional time to serve defendants.

## LEGAL STANDARD

### A.    Relief from Final Judgment

Rule 60(b) allows the Court to grant relief from a final judgment or order for

"mistake, inadvertence, surprise, or excusable neglect" or "any other reason that

justifies relief." Fed. R. Civ. P. 60(b)(1)&(6).

#### 1.    Sua Sponte Reconsideration

The Ninth Circuit has recognized that district courts have authority under

Rule 60(b) to vacate prior orders sua sponte. *Fid. Fed. Bank, FSB v. Durga Ma*

*Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004); *Kingvision Pay-Per-View Ltd. v. Lake*

*Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999). In *Kingvision*, the Ninth Circuit held

that a district judge could vacate a judgment under Rule 60(b), for example,

"where 'after mature judgment and re-reading the record he was apprehensive that

he had made a mistake.'" 168 F.3d at 352 (quoting *McDowell v. Celebrezze*, 310

F.2d 43, 44 (5th Cir. 1962)). In *Durga Ma Corporation*, the Ninth Circuit again

affirmed that, under Rule 60(b), a district court may correct a prior judgment sua

sponte for the court's "mistake or inadvertence." *Durga Ma Corp.*, 387 F.3d at

1024 (citing *Kingvision*, 168 F.3d at 350).

### 2. Excusable Neglect

The four *Briones* factors set out the test in the Ninth Circuit for a finding of

excusable neglect that would justify relief under rule 60(b).  A district court must

weigh: (1) the danger of prejudice to the non-moving party; (2) the length of the

filing delay[1] and its potential impact on the proceedings; (3) the reason for the

---

[1] The Ninth Circuit has not treated "delay" consistently. In some cases, the Circuit has focused on the moving party's delay in filing his Rule 60 motion. *See, e.g.*, *Irvine Unified Sch. Dist. v. K. G.*, 853 F.3d 1087, 1091 (9th Cir. 2017) (affirming a district court decision that analyzed "delay in pursuing Rule 60(b) relief"); *Lemoge v. United States*, 587 F.3d 1188, 1197 (9th Cir. 2009) (assessing a seven-month delay in bringing a Rule 60(b) motion); *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000) (focusing on "[t]he delay in filing the Rule 60(b)(1) motion"). In other cases, the Circuit has looked at the delay that led to the underlying final judgment or order. *See, e.g. M.D. v. Newport-Mesa Unified Sch. Dist.*, 840 F.3d 640, 643 (9th Cir. 2016) (examining a two-day underlying filing delay); *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1262 (9th Cir. 2010) (analyzing a three-day underlying filing delay).
(Continued)

filing delay; and (4) whether the movant acted in good faith. *Briones v. Riviera Hotel and Casino*, 116 F.3d 397, 381 (9th Cir. 1997) (adopting test and quoting from *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993)).

Excusable neglect includes cases of "negligence, carelessness, and inadvertent mistake," *Bateman v. U.S. Postal Serv.,* 231 F.3d 1220, 1224 (9th Cir. 2000) and cases where a party's failure to file on time is within "his or her control," *Pioneer*, 507 U.S. at 394. However, excusable neglect generally does not include attorney "carelessness" or "attorney error." *Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 666 (9th Cir. 1997). *See also Latshaw v. Trainer Wortham & Co*., 452 F.3d 1097, 1101 (9th Cir. 2006) ("For purposes of subsection (b)(1), parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel. This includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney

---

The Court is convinced that the latter interpretation is better. When the Supreme Court set out the factors for finding "excusable neglect," it explained that "for the purposes of Rule 60(b)," the analysis should apply to "situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer*, 507 U.S. at 394. The Supreme Court's focus on filing deadlines in instructive, because Rule 60(b) motions do not have a filing deadline except for the one-year limitation, which was not at issue in any of the Ninth Circuit cases. Therefore, the Court finds that it is more consistent with the text of *Pioneer* for "the filing delay" to refer to the delay that led to the underlying final order than the delay in filing a Rule 60 motion.

misconduct. Such mistakes are more appropriately addressed through malpractice claims.").

## ANALYSIS

The Court dismissed plaintiffs' complaint because they failed to oppose the defendants' dispositive motion and to properly serve defendants. *Order*, Dkt. 22. The Court will consider whether Rule 60(b) provides relief on either ground. [2]

### A.    Failure to Oppose the Motion to Dismiss

By not responding to defendants' motion to dismiss, plaintiffs failed to comply with one of the most basic requirements of litigation. Plaintiffs have now offered the following excuses for that delay: (1) after the Idaho Supreme Court resumed jury trials in March 2021, their counsel was in back-to-back trials for three months; (2) due to Covid-19 their counsel was working remotely and her legal assistants were out of the office during August 2021; (3) because the defendants' motion to dismiss was filed the same day as notice that Scott Barnes's

---

[2] The Ninth Circuit has held that the provisions in 60(b)(1) and 60(b)(6) are "mutually exclusive." *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1175 (9th Cir. 2002). Rule 60(b)(1)'s "excusable neglect clause" encompasses "errors made due to the 'mere neglect' of the petitioner" whereas Rule 60(b)(6)'s catchall clause "is intended to encompass errors or actions beyond the petitioner's control," including "gross negligence on the part of the attorney." *Id.* The Circuit has also indicated that the catchall clause should be used sparingly to prevent manifest injustice only under "extraordinary circumstances." *United States v. Washington*, 593 F.3d 790, 799-800 (9th Cir. 2009). As discussed below, counsel's errors in this case fall within the scope of 60(b)(1) and do not rise to the level of gross negligence to merit relief under 60(b)(6).

motion to dismiss was incorrectly filed, their counsel did not realize the
defendants' motion was distinct and "never saw the motion." *Declaration*, Dkt. 24
at ¶¶12-13.

     The Court will initially reexamine its own analysis of plaintiffs' failure to
oppose the dispositive motion and then will consider whether there is excusable
neglect on the part of plaintiffs' counsel.

### 1. Sua Sponte Reconsideration

     In the Ninth Circuit, "[f]ailure to follow a district court's local rules is a
proper ground for dismissal." *Ghazali v. Moran*, 46 F.3d 52, 53-54 (9th Cir. 1995)
(per curiam) (internal citations and quotations omitted). Before dismissing the
action, however, courts should weigh several factors: "(1) the public's interest in
expeditious resolution of litigation; (2) the court's need to manage its docket; (3)
the risk of prejudice to the defendants; (4) the public policy favoring disposition of
cases of their merits; and (5) the availability of less drastic sanctions." *Id.*

     When the Court dismissed plaintiffs' complaint based on their lack of
opposition to defendants' motion, it cited *Ghazali*, but neglected to weigh the
appropriate factors. Although the Court will do so now, the analysis does not
change the result.

     Here, as in almost every case, the first two factors weigh in favor of
dismissal. *See Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)

**MEMORANDUM DECISION AND ORDER - 7**

(the public's interest in expeditious resolution of litigation "always" weighs in favor of dismissal); *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990) (the court's need to manage its docket "favor[s] the imposition of sanctions in most cases"). That is particularly true here, where plaintiffs have failed to respond to a dispositive motion not once but twice.

The third factor, the risk of prejudice to the defendants, also weighs in favor of dismissal. In the Ninth Circuit, there is presumed prejudice from unreasonable delay unless plaintiffs can show non-frivolous excuse for delay. *Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir. 1998). Plaintiffs' excuses here are frivolous. Counsel blames the effects of the pandemic. The Court is sympathetic to the reality of pandemic disruptions. However, the pandemic effects she highlights were largely at play during the spring and summer—months before the motion was filed. Moreover, although counsel's mistaken assumptions about the filing are somewhat understandable, the error comes on top of other mismanagement. Particularly in a case where counsel had already failed to respond to one dispositive motion, the docket should have been monitored more carefully. In short, Plaintiffs fail to offer a non-frivolous explanation for the delays. This factor therefore weighs in favor of dismissal.

The fourth factor cuts the other way. In this case, as in all other cases, the public policy favoring disposition of cases of their merits "counsels against

dismissal." *Hernandez*, 138 F.3d at 401. Because, however, plaintiffs have now repeatedly failed to oppose dispositive motions, this factor weighs only slightly against dismissal.

The final factor requires the Court to consider the availability of less drastic sanctions. Defendants asked the Court to dismiss the complaint with prejudice. The Court chose to grant defendants' motion without prejudice as a less drastic sanction. Because of plaintiffs' repeated failure to respond to dispositive motions, the Court finds that dismissal without prejudice is the only acceptable less drastic sanction in this case.

In sum, the five-factor analysis supports dismissal of the complaint for failure to comply with the local rules. The Court's decision to grant defendants' motion in these circumstances is further supported by the fact that it is premised upon a local rule that expressly permits the Court to summarily grant unopposed motions. *Ghazali*, 46 F.3d at 53 ("Only in rare cases will we question the exercise of discretion in connection with the application of local rules.") (quoting *United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979)).

### 2.  Excusable Neglect

Because further analysis did not alter the Court's decision to dismiss the complaint without prejudice, the Court will turn to the plaintiff's Rule 60(b) motion. The issue is whether the *Briones* factors support relief because plaintiffs'

failure to oppose defendants' motion constitutes excusable neglect. Applying these factors here, two weigh in favor of granting relief and two weigh against it.

The first factor is prejudice. Defendants argue that they will be prejudiced if relief is granted because they "will have to spend time and money associated with defending an otherwise barred complaint." *Def. Br.*, Dkt. 25 at 4. This argument is unavailing because the Ninth Circuit has determined that when applying the *Briones* factors, "[p]rejudice requires greater harm than simply that relief would delay resolution of the case." *Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009). *See also TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) ("[M]erely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment."); *Bateman*, 231 F.3d at 1224-25 (concluding that the loss of a "quick victory" is insufficient prejudice to deny relief under Rule 60(b)).

The Court may also consider prejudice to plaintiffs if relief is denied. *See SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010). In *Lemoge*, the Ninth Circuit held that prejudice to plaintiffs is "an important consideration" when plaintiffs "cannot re-file their action because the statute of

limitations has run."[3] *Lemoge*, 587 F.3d at 1196. That is precisely the circumstance here. The two-year statute of limitations for plaintiffs to file their § 1983 claims ran on February 21, 2021. *See Order*, Dkt. 13 at 6.

Plaintiffs argue that the statute of limitations for their claim has not run. Under *Owens*, they contend, the Court should apply Idaho's four-year catchall statute of limitations to their § 1983 claim rather than the two-year statute of limitations for personal injury. *See Owens v. Okure*, 488 U.S. 235, 250 (1989). This argument misreads *Owens*. The Supreme Court directed courts to "resort to residual [or 'catchall'] statutes of limitations only where state law provides multiple statutes of limitations for personal injury actions and the residual one embraces, either explicitly or by judicial construction, unspecified personal injury actions." *Id.* at n12. That is not the case here. *Compare* I.C. § 5-219(4) (setting a two-year statute of limitations for a personal injury action) *with* I.C. § 5-224

_____

[3] The Ninth Circuit's holding in *Lemoge* was informed, in part, by the "concern for prejudice to the movant" embedded in Rule 4(m). 587 F.3d at 1195.  Accordingly, it put forth a somewhat narrower directive:

> We hold that at least where the movants' Rule 60(b)(1) motion (1) seeks to set aside a dismissal that arises from noncompliance with Rule 4(m), (2) the movants cannot re-file their action because the statute of limitations has run, and (3) there is no or only slight prejudice to the opposing party if relief is granted, the district court should consider, and give appropriate weight to, the movants' prejudice if relief is denied.

*Id.* Because the issue here is non-opposition to a dispositive motion, *Lemonge* does not require the Court to consider prejudice to the plaintiffs. But the Court is nevertheless convinced that prejudice is a "relevant circumstance" to evaluating excusable neglect in this case.

MEMORANDUM DECISION AND ORDER - 11

(setting a four-year statute of limitations for "action[s] for relief not hereinbefore provided for"). *See also Jun Yu v. Idaho State Univ.*, 444 P.3d 885, 890 (Idaho 2019) (applying Idaho's two-year statute of limitations to a § 1983 claim); *Van Hook v. Idaho*, No. 1:21-cv-00199-BLW, 2022 U.S. Dist. LEXIS 22416, at *33 (D. Idaho Feb. 4, 2022) (same).

Furthermore, plaintiffs' assertion that "in the case of wrongful arrest or wrongful seizure, the statute of limitations does not start to run until the charges are dismissed or otherwise disposed" is wrong as a matter of law. *Pl. Br.* Dkt. 23 at 4. The Ninth Circuit once had a rule that a § 1983 action "alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned." *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000). However, after the Supreme Court decision in *Wallace v. Kato*, 549 U.S. 384 (2007), the Ninth Circuit held that "*Harvey*'s deferred accrual rule has been 'effectively overruled' and is no longer good law." *Mills v. City of Covina*, 921 F.3d 1161, n.1 1171 (9th Cir. 2019) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)).

In sum, the first factor weighs in favor of plaintiffs because granting relief does not prejudice defendants but plaintiffs "would endure the ultimate prejudice of being forever barred from pursuing their claims." *Lemoge*, 587 F.3d at 1196.

But the second factor does not favor plaintiffs. The delay in this case was significant. Plaintiffs failed to respond to the motion for nearly 14 weeks. *See Harvest v. Castro*, 531 F.3d 737, 747 (9th Cir. 2008) (finding a 64-day delay "substantial"). The delay has not had a decisive impact on the proceedings because there is no litigation plan in place or upcoming deadlines to meet. But plaintiffs' repeated failure to respond to dispositive motions has undermined "the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. In part because of plaintiffs' failure to follow local rules, this litigation remains in its initial stages even though plaintiffs filed their suit more than a year ago.

Likewise, the third factor weighs against relief. As discussed previously, plaintiffs have not given a good reason for their delay. Counsel's failures fall squarely within the category of "innocent, albeit careless or negligent, attorney mistake" that the Ninth Circuit has suggested is not an appropriate reason to find excusable neglect. *Latshaw*, 452 F.3d at 1101. "There must be some obedience to the rules of court; and some respect shown to the convenience and rights of other counsel, litigants, and the court itself." *Smith v. Stone*, 308 F.2d 15, 18 (9th Cir. 1962).

The final factor is whether plaintiffs acted in good faith. Admittedly, plaintiffs' record of responding to dispositive motions in this case is dismal—of three filed, they have answered only one. *See*, Dkt. 9, Dkt. 15, Dkt. 16.

**MEMORANDUM DECISION AND ORDER - 13**

Nevertheless, plaintiffs' careless and negligent actions do not rise to the level of bad faith. *See Newport-Mesa School*, 840 F.3d at 643. This factor weighs in favor of vacating the order.

Thus, as already noted, two factors weigh in favor of granting relief and two weigh against relief. The Ninth Circuit has made clear, on several occasions, that no one factor is more important than the other, and that the weighing of the equitable *Briones* factors must be left to the discretion of the district court. *See, e.g., Mendez v. Knowles*, 556 F.3d 757, 765 (9th Cir. 2009); *Pincay v. Andrews*, 389 F.3d, 853, 860-61 (9th Cir. 2004) (Berzon, J., concurring).

The Court concludes that relief is not appropriate here even though that decision permanently bars plaintiffs from pursuing their claims. This outcome is justified primarily because the two factors weighing against relief—the long delay and the lack of a reasonable explanation for that delay—are compelling. Although the court always prefers to litigate cases on the merits, parties must comply with deadlines and diligently litigate their cases. Granted, the occasional filing will slip through the cracks, and the Court is typically amenable to granting extensions or other relief, as appropriate. But in this case, this was the second delay, it was lengthy, and plaintiffs did not have a good reason. The Court cannot find that relief under Rule 60(b)(1) is warranted.

## B.    Failure to Serve

Plaintiffs' failure to serve defendants was a second and separate ground supporting the Court's order of dismissal. It is not entirely clear from plaintiffs' brief whether they are challenging the Court's conclusion that they did not complete service or whether they are arguing that that their failure is excusable neglect. So, as an initial matter, the Court will spell out why plaintiffs' service is largely insufficient under the Federal Rules of Civil Procedure.

### 1.  Adequacy of Service

Plaintiffs have a duty to serve each defendant in their case within 90 days after filing the complaint or to request a waiver of service. Fed. R. Civ. P. 4. The question is whether plaintiffs have completed service on (1) Kootenai County, (2) Kootenai County Sheriff's Office, and (3) seven Sheriff's Office employees in their individual and personal capacities.

#### a.  Waiver

Rule 4(d) provides that a "plaintiff may notify" a defendant "that an action has been commenced and request that the defendant waive service of a summons." Fed. R. Civ. P. 4(d). If a defendant signs and returns the waiver, the plaintiff then files it with the Court and "proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver." *Id.* Because defendants have "a duty to avoid unnecessary expenses of serving the

summons," if they fail to sign and return a waiver without good cause, "the court must impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." *Id.*

In this case, service has not been waived. Plaintiffs have not filed a waiver with the Court. Moreover, defendants' counsel indicated via email that they would not be waiving service but that plaintiffs would need "to have the County and its officers formally served with process." *Declaration*, Dkt. 24 at 9.

It is unclear whether plaintiffs are arguing that service was waived. They state that once defense counsel appeared in the case "it was presumed that [service] was unnecessary because "[t]he federal rules attempt to avoid the expense of serving all defendants in person by allowing for a waiver of service to be served." *Pl. Br.* Dkt. 23 at 2. That presumption is wrong. An appearance is not itself a waiver. Under Rule 12, the defense of insufficient service of process is waived if defendants appear *and* fail to include that defense in their answer, but in this case defendants have not answered. Accordingly, the Court concludes that defendants did not waive service by filing a motion to dismiss.[4]

---

[4] Although not obliged to do so, defendants gave plaintiffs plain notice that they had not
(Continued)

### b.  Officers in Their Individual Capacities

Service upon a defendant in their individual capacity must conform with

Rule 4(e), which provides:

> Serving an Individual Within a Judicial District of the United States.
> Unless federal law provides otherwise, an individual—other than a
> minor, an incompetent person, or a person whose waiver has been
> filed—may be served in a judicial district of the United States by:
>> (1) following state law for serving a summons in an action brought
>> in courts of general jurisdiction in the state where the district court
>> is located or where service is made; or
>> (2) doing any of the following:
>>> (A) delivering a copy of the summons and of the complaint to
>>> the individual personally;
>>> (B) leaving a copy of each at the individual's dwelling or usual
>>> place of abode with someone of suitable age and discretion who
>>> resides there; or
>>> (C) delivering a copy of each to an agent authorized by
>>> appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e); *see also* Idaho R. Civ. P. 4(d)(1) (providing that "an

individual, other than a person under age 14 or an incompetent person, may be

served" through the methods of service nearly identical to those found in Rule

4(e)(2)(A)-(C)).

Here, plaintiffs knew by May 18 that they would need to serve each of the

seven officers individually. *Declaration*, Dkt. 24 at 9 (defendants' counsel

---

waived service. *See Notice of Appearance*, Dkt. 7 ("Defendants specifically state that no defense
or insufficient service of process has been waived by entry of this Notice of Special
Appearance.").

notifying plaintiffs' counsel that the officers would need to be "formally served with process"). The parties agree that on May 19, 2021, plaintiffs attempted to serve the seven individual officers. Jared Coons went to the Sheriff's Office and at 10:47 am left summons for Defendants Hanson, Chambers, Ghirordazzi, Hanson, Maxwell, Reynolds, Vrevich, and Wolfinger/Norris with Bridget Gernns. *Declaration*, Dkt. 24 at 15-22. Ms. Gernns has filed a declaration stating that (1) Mr. Coons did not identify himself or state that he was serving legal papers; (2) Mr. Coons handed her a packet and indicated only that it was paperwork for the Sheriff; (3) Mr. Coons did not ask to speak to the Sheriff or any police officers; (4) at the time, she was not an authorized agent or a chief executive officer for the Sheriff's Office or a registered agent for service of process for Kootenai County. *Gernns Declaration* 16-3.

This is plainly inadequate service. Plaintiffs did not serve any of the defendants personally or at their dwellings or usual places of abode. They apparently do not dispute that Ms. Gernns was not an agent authorized by appointment or by law to receive service of process for the officers. At best, they indicate they relied on an assumption based on past practice that the "Kootenai County Sheriff routinely accepts service of subpoenas for officers." *Declaration*, Dkt. 24 at 4. This cannot cure the defects in service. Accordingly, the Court concludes that plaintiffs did not serve the individual defendants.

### c. *Official Capacity and Governmental Entities*

Serving an individual defendant in his or her official capacity "may be made personally or by leaving the summons and complaint with an authorized agent at the defendant's place of employment." *Gerritsen v. Consulado Gen. De Mexico*, 989 F.2d 340, 344 (9th Cir. 1993).

Service upon a "a municipal corporation, or any other state-created governmental organization that is subject to suit" must be accomplished by "delivering a copy of the summons and of the complaint to its chief executive officer" or "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Idaho provides that "[t]o serve any other governmental subdivision, municipal corporation, or quasi-municipal corporation or public board, a party must deliver a copy of the summons and complaint to its chief executive officer, secretary or clerk." Idaho R. Civ. P. 4(d)(4)(B).

For the reasons already explained, plaintiffs service at the Sheriff's Office is inadequate service as to both the Office itself and the individual Sheriff's Office employees in their official capacity. Ms. Gernns is not an authorized agent of the employees, nor is she a chief executive officer, secretary, or clerk of the Sheriff's Office.

MEMORANDUM DECISION AND ORDER - 19

Because the parties' initial briefing did not address the issue of service on Kootenai County, the Court ordered supplemental briefing "discussing the adequacy of service on Kootenai County." *Order*, Dkt. 26. To the extent the parties' supplemental briefing exceeded the scope of the Court's order—rehashing, for instance, an argument about service on the individual deputies or presenting a new argument about quasi-estoppel—the Court will not consider it.

Broadly speaking, the parties agree that plaintiffs served Kootenai County by delivering a copy of their complaint and issued summons to Shannon Lee and Bobbi Davidson on May 19, 2021. The Court is not persuaded by Defendants' argument that this service was premature and improper because the Court had not ruled on plaintiffs' motion for leave to file their complaint and to "backdate" their claims. On the one hand, as the Court indicated in its earlier order, "plaintiff's submission of a complaint to the clerk's office, as part of a plaintiff's good-faith, but ultimately unsuccessful, effort to comply with a state-law bond requirement, constitutes the 'filing of a complaint with the court' sufficient to satisfy the requirements of Rule 3." *Order*, Dkt. 13 at 7. In addition, plaintiffs formally filed their complaint on May 19, just before they served Ms. Lee and Ms. Davidson. *Id*. Defendants fail to cite any cases or statutes that would indicate otherwise.

The Court therefore concludes that plaintiffs properly and timely served Kootenai County. Having provided notice to the parties the Court was

reconsidering the January 24, 2022 order with regard to the issue of service on defendant Kootenai County, the Court now reverses its previous determination under Rule 60(b).

### d. Actual Notice

Plaintiff's argument is not the picture of clarity, but they may be arguing that defense counsel's appearance rendered service unnecessary, because defendants had actual notice of the lawsuit. *See Pl. Br.* Dkt. 23 at 3 ("The defendants or their attorneys have known about this lawsuit since February 19, 2021, and have filed a notice of appearance as soon as the suit was served on the Kootenai County Sheriff Office. In essence, they accepted service by acknowledging the lawsuit."); *see also id.* at 2 ("The federal rules attempt to avoid the expense of serving all defendants in person by allowing for a waiver of service to be served. Since an attorney appeared in this case, it was presumed that was unnecessary.); *Declaration,* Dkt. 24, at 5 ("Plaintiffs are not supposed to be chasing defendants around to serve them when they are clearly aware of the case and have appeared through counsel.").

Defendants did not accept service by acknowledging the lawsuit. Although "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint," neither "actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule

4." *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) (internal quotation and citation omitted). *See also Mid-Continent Wood Prod., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991) ("[A]ctual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process."); *Mendoza-Jimenes v. Bonneville Cty.*, No. 4:17-cv-00501-DCN, 2018 U.S. Dist. LEXIS 133755, at *9-10 (D. Idaho Aug. 7, 2018) ("[A]n initial appearance, the filing of a motion to dismiss, or any action on an attorney's part, is not acquiesce[nce] to service simply because the attorney took action."). Because here, as discussed above, service was not made in substantial compliance with Rule 4, defendants' actual notice does not establish personal jurisdiction.

### e. Additional Time for Service

Plaintiffs argue that "[i]f the Court finds that service was not proper, however, the Court 'must' allow a party a reasonable time to cure its failure to serve pursuant to F.R.C.P. §4(l)(4)." *Pl. Br.*, Dkt. 23 at 5. Rule 4(i)(4) concerns service on the United States and federal officers. Because the officers here are municipal employees, Rule 4(m) governs.

Pursuant to Rule 4(m), if a defendant is not properly served, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice as to that defendant or order that service be made in a specified time." Fed. R. Civ. P. 4(m). The rule further provides that "if the plaintiff shows good

cause for the failure, the court must extend the time for service for an appropriate period." *Id*.

Here, defendants made the appropriate motion under Rule 4(m) and plaintiffs did not respond in any way, much less by making a showing of good cause. Accordingly, the rules do not require the Court to give plaintiffs more time to serve the defendants.

### 2.  Excusable Neglect

Because, with the exception of Kootenai County, plaintiffs did not complete service on defendants, the Court will turn to plaintiffs' Rule 60(b) motion. The question is whether the *Briones* factors support relief because plaintiffs' failure to serve constitutes excusable neglect. Applying these factors here, once more, two weigh in favor of granting relief and two weigh against it.

For the reasons already stated, the first and fourth factors support granting relief. The first factor falls in the plaintiffs' favors because granting relief does not prejudice defendants but denying relief would bar plaintiffs from pursuing their claims. The fourth factor favors plaintiffs because although plaintiffs apparently critically misunderstood the Federal Rules of Civil Procedure, their actions do not rise to the level of bad faith.

The second and third factors again weigh against relief. The length of the delay in service is significant. Plaintiffs have failed to complete service on most

defendants despite filing suit more than a year ago and already receiving an extension of time for service. Because of this considerable time lag, the litigation remains in its initial stages. Put bluntly, plaintiffs' neglect is excessively drawing out this litigation.

In addition, plaintiffs do not have good reason for their delay. Plaintiffs gives three reasons for their failure to complete service (1) their counsel's email correspondence with opposing counsel, (2) their counsel's belief that the Sheriff's Office and its employees had been served, and (3) opposing counsel's appearance in the case. None of these justify the delay.

First, plaintiffs allege that their counsel's correspondence with opposing counsel amounts to "purposeful avoidance of process or trickery" that excuse the failure to serve. *Pl. Br.*, Dkt. 23 at 3. Plaintiffs say that defense counsel initially stated that "she would accept service on behalf of Kootenai County," but later, "in contradiction to her earlier email," said that "she would not accept service for Kootenai County and its employees." *Declaration*, Dkt. 24 at 3. Although plaintiffs recount this version of events, they also claim that "[w]hen asked if counsel was going to accept service, counsel for defendants . . . did not respond and remained silent." *Pl. Br.* Dkt. 23 at 2-3.

The emails tell a different story. In the initial email on March 4, 2021, defense counsel explains that she "was asked to accept service on behalf of

Kootenai County" but asks for "a copy of the filed summons, complaint and any other pleadings filed [to] determine if we will accept service on behalf of all defendants." *Declaration*, Dkt. 24 at 8. Defense counsel clearly stated that the issue of accepting service was an open question. Plaintiffs' counsel indicated as much in her follow-up email, in which she inquired whether defense counsel was "planning to accept service for all Defendants." *Id.* There was no backtracking on the part of defense counsel.

It is also disingenuous to say that defense counsel was not responsive. Granted, she probably could have reached out after receiving the proposed complaint. But plaintiffs have the burden of service and plaintiffs should have followed up sooner. When plaintiffs' counsel did reach out on May 17, 2021—just as the time to serve was expiring—defense counsel responded in less than 24 hours, explaining that she would not be accepting service, but that plaintiffs would need to have "the County and its officers formally served with process." *Id.*

Defense counsel was responsive and upfront. She certainly did not engage in "purposeful avoidance of process or trickery." The way that plaintiffs' counsel interpreted the emails is at least negligent if not outright unreasonable. In any event, it does not constitute the type of error that supports a finding of excusable neglect.

Next, plaintiffs claim they thought the Sheriff's Office and its employee

MEMORANDUM DECISION AND ORDER - 25

defendants had been served. As discussed previously, plaintiffs attempted to serve the Sheriff's Office and its employees by leaving summons with Bridget Gernns, who could not accept service for any of the defendants. Plaintiffs' counsel explains why they served the officers this way:

> In my practice in Kootenai County, Idaho, which includes regular service of subpoenas on police officers, police officers like to accept service of process at work at the sheriff department or at the Idaho State Patrol. The Kootenai County Sheriff routinely accepts service of subpoenas for officers. I did not think it was unusual at all that the Kootenai County Sheriff would have accepted service for all defendants . . . especially in light of the fact that an attorney appeared on behalf of all defendants almost immediately. I do not instruct my process server go to an officer's residence if they accept service through the Sheriff Department, because I find that to be invasive and they do not prefer it.

*Declaration*, Dkt. 24, at 4. Once more, this is a weak explanation for the litigation failures.

Plaintiffs have a duty to ensure service is proper. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) ("Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."). Valid service is established through compliance with the Federal Rules of Civil Procedure—not through custom or routine. The failure to confirm that service was adequate, especially *after* receiving an email from defense counsel explaining that each defendant would need to be served individually and a Court order allowing an additional 30 days to complete service, was careless. Counsel's reliance on

practices that, even if routine, are not adequate to complete service does not support a finding of excusable neglect.

Finally, as discussed previously, plaintiffs point to defense counsel's appearance. Plaintiffs' counsel explains that she thought all defendants "were served pursuant to F.R.C.P. §4, because counsel had appeared for all defendants." *Declaration*, Dkt. 24, at 5. *See also id.* (explaining that because the notice of appearance was filed the day after the summons were left with Ms. Gernns, "[i]t appeared that service was effective in providing notice to the defendants").

As the Court has already explained, this is a legal error. The Ninth Circuit has observed that in general, "a lawyer's mistake of law in reading a rule of procedure is not a compelling excuse" under rule 60(b)(1). *Pincay v. Andrews*, 389 F.3d 853, 859 (9th Cir. 2004) (en banc). *See also Latshaw*, 452 F.3d at 1101 (holding that "attorney-based mistakes of law" are usually not grounds to find excusable neglect). Here, counsel's mistake of law is not a good reason for the delay in service.

Again, two factors weigh in favor of granting relief and two weigh against relief. The Court concludes that relief is not appropriate here. Although that decision will permanently prevent plaintiffs from pursuing their claims, the outcome is justified because the two factors weighing against relief—the long delay and the lack of a reasonable explanation for that delay—are compelling. The

Court's preference is always for parties to litigate a case on its merits, but to do so parties must comply with deadlines. Rule 4(m) is flexible, but not limitless. Relief under Rule 60(b)(1) is not warranted.

## CONCLUSION

With the exception of Kootenai County, the Court has concluded that both bases of its original decision—failure to oppose a dispositive motion and failure to serve—are sound. Therefore, the final question is whether to grant relief under 60(b) as to plaintiffs' claims against Kootenai County. The Court concludes relief is not appropriate. Although the Court acknowledges that the service on Kootenai County was proper, the Court stands by its decision to dismiss the suit based on plaintiffs' failure to respond to the motion to dismiss for the reasons discussed previously. *See supra,* Section A.

## ORDER

**IT IS ORDERED that:**

1.   Plaintiffs' Motion to Set Aside Order of Dismissal (Dkt. 23) is **DENIED**.

2.   Plaintiffs' Request to Extend Time for Service (Dkt. 23) is **DENIED AS MOOT**.

DATED: May 31, 2022

B. Lynn Winmill
U.S. District Court Judge